UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL M.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　　　Defendant. | Case No.: 23-cv-0381-DEB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[DKT. NO. 10]** |

**I. INTRODUCTION**

Plaintiff Cheryl M. seeks judicial review of the Commissioner of Social Security's denial of her application for disability benefits.[2] Dkt. No. 1. Plaintiff filed a Motion for Summary Judgment, Defendant opposed, and Plaintiff replied. Dkt. Nos. 10, 16, 17.

For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Summary Judgment. Dkt. No. 10.

//

---

[1] Martin O'Malley is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

[2] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## II. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and Supplemental Security Income alleging disability beginning February 7, 2020. AR 40.[3] She subsequently amended the alleged onset date to June 3, 2020. *Id.* The Social Security Administration denied Plaintiff's application initially and on reconsideration. *Id.* Plaintiff requested and received an Administrative Law Judge ("ALJ") hearing, after which the ALJ issued a written decision finding Plaintiff not disabled. AR 37–57. The Appeals Council denied Plaintiff's request for review (AR 7–12), and this case followed.

## III. SUMMARY OF ALJ'S DECISION

The ALJ's decision followed the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920(a).

At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since June 3, 2020," the amended alleged onset date. AR 43.

At step two, the ALJ found Plaintiff had the following severe impairments: anxiety disorder, back strain/sprain, cardiac dysrhythmias, depressive disorder, and fibromyalgia. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 44. The ALJ then evaluated whether Plaintiff satisfied the "paragraph B" criteria. AR 46–47.

To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920a.

---

[3] "AR" refers to the Administrative Record lodged on May 1, 2023. Dkt. No. 9. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

Applicants are scored in each area and assessed to have none (no limitation), mild, moderate, marked, or extreme limitation. *Id*.

The ALJ found Plaintiff had moderate limitations in all four functional areas. AR 46–47. Because Plaintiff's mental impairments did "not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria [were] not satisfied." AR 47.

Before proceeding to step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [S]he is further limited to occasional climbing ramps or stairs but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can frequently handle and finger with the left hand. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, and hazards. Mentally, the claimant can understand, remember, apply, and carry out simple instructions and tasks. She can appropriately interact with coworkers and supervisors but no teamwork and no collaborative work. She can respond appropriately to supervision and routine work situations and settings. She can adapt appropriately to changes in a routine work setting and situations, ask appropriate questions, make decisions, and use judgment.

AR 48.

At step four, the ALJ found Plaintiff unable to perform past relevant work as a medical biller. AR 55.

At step five, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 56. The ALJ, therefore, concluded Plaintiff was not under a disability at any time since June 3, 2020. AR 57.

**IV. STANDARD OF REVIEW**

The Court reviews the ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214–15 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla, but less than a preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison*, 759 F.3d at 1010. The Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Furthermore, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' . . . .") (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## V. DISCUSSION

Plaintiff argues the ALJ erred in formulating the mental health limitations in the RFC, including his evaluation of statements made by Jeffrey Norris, M.D. Plaintiff also challenges the ALJ's step-five finding. Dkt. No. 10 at 6–13. As discussed below, the Court finds the ALJ's decision is supported by substantial evidence and complied with the law.

### A. **Plaintiff's Mental RFC**

Plaintiff contends the mental health limitations in the RFC are not supported by substantial evidence. *Id.* at 6–9.

The RFC is "the most [the plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating the RFC, the ALJ must weigh "all the relevant evidence," including medical records, medical and other source opinions, and the claimant's symptom testimony.[4] *Id.* § 404.1545(a)(1)–(3); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating

---

[4] Plaintiff does not challenge the ALJ's evaluation of her subjective symptom testimony.

clinical findings into a succinct RFC.") (citation omitted). The RFC must be supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217 ("We will affirm the ALJ's determination of [the] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

The ALJ here formulated an RFC with the following mental limitations:

> Mentally, the claimant can understand, remember, apply, and carry out simple instructions and tasks. She can appropriately interact with coworkers and supervisors but no teamwork and no collaborative work. She can respond appropriately to supervision and routine work situations and settings. She can adapt appropriately to changes in a routine work setting and situations, ask appropriate questions, make decisions, and use judgment.

AR 48.

Plaintiff points to evidence she appears to argue is inconsistent with these limitations, including a psychiatric hold in June 2020; mental status examinations showing an anxious and restless mood, mildly disorganized thought process, delusions, paranoia, and sporadic tearfulness; and assessments of anxiety, depression, panic attacks, and a schizoaffective disorder. Dkt. No. 10 at 7–8. The ALJ's decision, however, considered this evidence.[5] AR 49–54. For example, the ALJ's decision considered Plaintiff's June 2020 hospitalization and the mental status examinations "report[ing] . . . anxious mood, worried affect, sporadically tearful, mildly disorganized thought process, paranoia, and delusion[al] thought content . . . ." AR 50. It also addressed treatment records discussing Plaintiff's "continued . . . paranoid delusions," "auditory hallucinations at times," and "ongoing conservative treatment . . . for moderate major depressive disorder and anxiety." AR 51.

The ALJ's decision further considered and discussed other substantial evidence that supports the mental limitations contained in the RFC. This evidence includes a psychiatric hospitalization in June 2020 after which Plaintiff "rapidly began to stabilize with medications," "treatment records . . . during the relevant period indicated that with

---

[5] Plaintiff concedes "[t]he ALJ summarized these findings." Dkt. No. 10 at 8.

medication management[,] the claimant was doing well," and "primarily conservative outpatient treatment with prescribed medications and infrequent psychotherapy [was used] to treat the claimant's depression and anxiety symptoms." AR 50, 53.

The ALJ weighed the evidence, including that cited by Plaintiff, and formulated an RFC with limitations supported by substantial evidence.[6] The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citation omitted).

Plaintiff further contends the ALJ erred in characterizing Dr. Norris' report as a non-medical opinion. In formulating the mental limitations in the RFC, the ALJ "note[d] that Dr. Norris did not submit a medical opinion" because his report "primarily contains subjective complaints and no true function-by-function mental assessment." AR 54. Plaintiff argues this is legal error because Dr. Norris "gave a history, observations, and the results of mental status examinations." Dkt. No. 10 at 8–9. According to Plaintiff, the ALJ, therefore, had to evaluate the persuasiveness of Dr. Norris' "opinions." *Id*. The Court disagrees and finds Dr. Norris' report constitutes "other medical evidence" not requiring a persuasiveness analysis.

The regulations distinguish between a "medical opinion" and "other medical evidence." "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in being able to perform physical and mental demands of work activities, perform other demands of work, and adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2)(i)–(iv). By contrast, "[o]ther medical evidence is evidence from a

---

[6] Notably, Plaintiff does not identify what additional functional mental limitations were warranted in the RFC. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and shoulder injuries, besides the limitations already listed in the RFC").

medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 404.1513(a)(3).

The ALJ must evaluate the persuasiveness of a medical opinion, including its supportability and consistency. *Id.* § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."); *see also Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) ("The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings . . . .") (internal citations omitted). But there is no requirement to do the same for other medical evidence. *See Joseph B. v. Kijakazi,* No. 1:21-cv-0361-DKG, 2022 WL 2967565, at *10 (D. Idaho July 26, 2022) ("The ALJ is not expressly required to evaluate 'objective medical evidence' or 'other medical evidence' under the persuasiveness factors in 20 C.F.R. § 404.1520c.") (citation omitted).

On December 23, 2021, Dr. Norris completed an "Evaluation Form for Mental Disorders." AR 1510–14. He was "covering" for Plaintiff's treating psychiatrist Dr. Lindeman "who [was] on paternity leave." AR 1513. Dr. Norris summarized Plaintiff's extensive treatment history, diagnoses, prognosis, and medications. These summaries are "other medical evidence" and do not constitute medical opinions under the regulations. *See* 20 C.F.R. § 404.1513(a)(3).

Dr. Norris' report also contains statements relating to Plaintiff's intellectual functioning, social functioning, concentration and task completion, and adaptation to work or work-like situations. Dr. Norris found "no indication . . . of issues w[ith Plaintiff's] intellectual functioning." AR 1511. He stated, however, Plaintiff "was unable to follow task list or directions" because of "psych issues" and is "easily distracted due to anxiety." AR 1512. He also stated Plaintiff has "difficulty making decisions, attending to tasks, and

maintaining relationships w[ith] others, including supervisors" because of her anxiety and "inability to concentrate." *Id*. Although Dr. Norris' statements discuss Plaintiff's limitations, they do not address what she "can still do despite [her] impairments." 20 C.F.R. § 404.1513(a)(2). As a result, they are not medical opinions, and the ALJ did not have to evaluate their persuasiveness. *See Jessie L. v. Kijakazi*, No. 20-cv-9305-DMR, 2022 WL 2222964, at *14 (N.D. Cal. June 21, 2022) ("[A] 'medical opinion' must discuss both a claimant's limitations and 'what [the claimant] is still capable of doing' despite those limitations, which [the doctor's] report did not do.") (citation omitted); *Rokko M. v. Comm'r of Soc. Sec.*, No. 2:22-cv-0029-DWC, 2022 WL 4482625, at *3 (W.D. Wash. Sept. 27, 2022) ("[The doctor's summary] does not include the work-related functional limitations that would render it a 'medical opinion' as defined by the regulations, therefore the ALJ was not required to evaluate it as such and consider its supportability and consistency."). The ALJ, therefore, did not err in finding Dr. Norris' report is not a medical opinion. *See Rodin v. Comm'r of Soc. Sec.*, No. 1:21-cv-0900-SAB, 2023 WL 3293423, at *18 (E.D. Cal. May 5, 2023) (finding medical statements that lacked "specific opinions concerning what Plaintiff is capable of doing, and specific functional limitations" did not "constitute any medical opinion under the new regulations").[7]

---

[7] Any arguable error in the ALJ's treatment of Dr. Norris' report is harmless because the ALJ incorporated Dr. Norris' generalized observations into Plaintiff's RFC. *See REBECCA ANNE GOLTZ, Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant.*, No. 1:23-cv-0183-SAB, 2024 WL 1311668, at *11 (E.D. Cal. Mar. 27, 2024) ("An ALJ's RFC findings need only be *consistent* with relevant assessed limitations but need not be *identical* to them.") (citation omitted). For example, Dr. Norris wrote Plaintiff is "unable to follow task list or directions," "has difficulty making decisions," and is "easily distracted due to anxiety." AR 1512. Dr. Norris further noted Plaintiff "must re-read things 3-4 times to absorb." *Id*. The ALJ similarly found Plaintiff was limited to understanding, remembering, applying, and carrying out simple instructions and tasks. AR 54. Dr. Norris also wrote Plaintiff "has difficulty" in "maintaining relationship with others, including supervisors." AR 1512. Consistent with this, the ALJ found Plaintiff "can appropriately interact with coworkers and supervisors *but no teamwork and no collaborative work*." AR 48 (emphasis added).

## C. The Step-Five Finding

At the fifth and final step of the sequential process, the ALJ relied on the vocational expert ("VE") to conclude Plaintiff can work as a price marker, routing clerk, and small products assembler. AR 56. The ALJ also "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* Plaintiff challenges this step-five finding, arguing all three jobs require teamwork, which is inconsistent with the RFC's mental limitations. Dkt. No. 10 at 9–13. Plaintiff claims the ALJ erred by "fail[ing] to resolve the apparent and obvious conflicts" between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), other government data subject to administrative notice, and agency policy. *Id.* The Court disagrees.

At step five, the ALJ considers the claimant's "background and residual functional capacity . . . to decide if [she] can make an adjustment to some other available job." *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016) (citation omitted). The ALJ may rely on a VE to help make this determination. *Id.* at 806–07. The DOT, which is "a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis." *Id.* at 807. If the VE's opinion regarding what work the claimant can do "conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Id.*

At the administrative hearing, the ALJ provided the VE with a hypothetical that limited Plaintiff to, among other things, light work and no teamwork. AR 150–51. The VE opined Plaintiff could work as a price marker, routing clerk, and small products assembler. AR 151. The ALJ then asked the VE whether her testimony was "consistent with the Dictionary of Occupational Titles." AR 152. The VE testified that "it is" consistent, and she used her "past experience, education, and knowledge to answer [the ALJ's] hypotheticals" relating to certain limitations like the "teamwork component" because the DOT does "not necessarily address" them. *Id.*

The Court does not find any apparent or obvious conflicts between the VE's testimony and DOT with respect to the price marker and routing clerk jobs. Neither of these jobs require teamwork. The absence of any "obvious or apparent" conflicts, therefore, did not "trigger" the ALJ's duty to inquire. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) ("We have explained that the conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further.") (quoting *Gutierrez*, 844 F.3d at 807).

Regarding the third identified job (i.e., small products assembler), the DOT describes that position as someone who "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." Plaintiff appears to argue this description is inconsistent with the RFC's limitation of "no teamwork and no collaborative work." Dkt. No. 10 at 10. The Court disagrees. Although the DOT describes the position as "a member of [an] assembly group," the duties only require "assembling" and "passing . . . to another worker." Thus, no consultative teamwork or collaboration is required.

Regardless, even if there were an unresolved inconsistency between the small parts assembly requirement and Plaintiff's RFC, any error is harmless based on the consistency with the price marker and routing clerk jobs. *See Shari B. v. Comm'r of Soc. Sec.,* No. 3:19-cv-6128-DWC, 2020 WL 4200969, at *2 (W.D. Wash. July 22, 2020) ("[A]ny error in failing to resolve th[e] conflict [with one job] is harmless, since the Plaintiff in this case clearly retained the ability to perform" the other two jobs the ALJ found she could do.); *Lynette T. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-cv-0561-YY, 2023 WL 2929491, at *3 (D. Or. Apr. 13, 2023) (finding harmless error where "the ALJ confirmed that the VE had 'relied on [his] experience' . . . to ensure his testimony was 'consistent with the DOT'" and identified two other jobs with no conflicts that exist in significant numbers in the national economy) (citation omitted).[8]

---

[8] To the extent Plaintiff alleges the ALJ erred by failing to resolve conflicts between the VE's testimony and the O*NET, *see* Dkt. No. 10 at 9–13, the ALJ had no such duty. *See*

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. No. 10). The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  March 29, 2024

Honorable Daniel E. Butcher
United States Magistrate Judge

---

*David G. v. Saul*, 2020 WL 1184434, at *5 (C.D. Cal. Mar. 11, 2020) ("[C]ourts in this circuit have consistently found that an ALJ is under no obligation to resolve a conflict between VE testimony and . . . O*NET data"), *aff'd sub nom. George v. Saul*, 837 F. App'x 516 (9th Cir. 2021) (citation omitted). The Court also is not persuaded by Plaintiff's argument that the ALJ failed to resolve conflicts with the Program Operations Manual System ("POMS"), an "internal Social Security Administration guidance document," which "does not impose judicially enforceable duties on either this [C]ourt or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072–73 (9th Cir. 2010) (citation omitted).